Keith S. Burron, WSB No. 5-2884
The Burron Firm, P.C.
1695 Morningstar Road
Cheyenne, WY 82009
Phone: (307) 631-7372
keith@burronlaw.com

Peter J. Schaumberg, *pro hac vice* pending
James M. Auslander, *pro hac vice* pending
BEVERIDGE & DIAMOND, P.C.
1350 I St., N.W., Suite 700
Washington, DC 20005
Phone: (202) 789-6009
Fax: (202) 789-6190
pschaumberg@bdlaw.com
jauslander@bdlaw.com
*Attorneys for Petitioner American Petroleum Institute*

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2019 JUN 13  PM 1  14

STEPHAN HARRIS, CLERK
CHEYENNE

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| AMERICAN PETROLEUM INSTITUTE, )<br><br>    Petitioner, )<br><br>v. )<br><br>UNITED STATES DEPARTMENT OF THE )<br>INTERIOR; DAVID BERNHARDT, in his )<br>official capacity as Secretary of the U.S. )<br>Department of the Interior; OFFICE OF )<br>NATURAL RESOURCES REVENUE; and )<br>GREGORY GOULD, in his official capacity as )<br>Director of the Office of Natural Resources )<br>Revenue,<br><br>    Respondents. | Case No.  19-CV-121-S |

## PETITION FOR REVIEW OF FINAL AGENCY ACTION

Pursuant to the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706 and Local

Rule 83.6, Petitioner American Petroleum Institute (API) submits this Petition challenging the

U.S. Department of the Interior's Office of Natural Resources Revenue's (ONRR) 2016 final rule on valuation for royalty purposes of federal oil and gas production, as well as federal and Indian coal production. *See* Consolidated Federal Oil & Gas and Federal & Indian Coal Valuation Reform, 81 Fed. Reg. 43,338 (July 1, 2016) (the Final Rule). The Final Rule purports to promote "greater simplicity, certainty, clarity, and consistency in product valuation," but is anything but simple, certain, clear, or consistent. With no reasoned basis, the Final Rule upends a longstanding valuation system and replaces it with widespread uncertainty and unconstrained agency "discretion," thereby placing both offshore and onshore federal oil and gas lessees in an untenable position going forward with respect to their royalty reporting and payment obligations. Its net effect is an attempt to inflate royalty demands beyond what is fairly, and legally, due from federal lessees based on the value of the oil or gas production at or near the lease.

Even ONRR has confirmed that the Final Rule is fundamentally flawed and unworkable. Acknowledging the Final Rule's major shortcomings, coupled with its lack of meaningful expected royalty benefits, ONRR subsequently rescinded it. *See* "Repeal of Consolidated Federal Oil & Gas and Federal & Indian Coal Valuation Reform 82 Fed. Reg. 36,934 (Aug. 7, 2017) ("Repeal Rule"). That Repeal Rule stayed and ultimately mooted previous lawsuits in this Court against the Final Rule, which API and the other Petitioners then voluntarily dismissed without prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i). *See American Petroleum Institute v. USDOI*, Case No. 16-cv-316 (filed Dec. 29, 2016). Environmental groups and the States of California and New Mexico then challenged the separate Repeal Rule in a different forum than this Court– the U.S. District Court for the Northern District of California – which vacated the Repeal Rule without addressing the merits of the Final Rule. *See State of Cal., et al. v. USDOI*, No. 17-5948, ECF Nos. 72, 73 (Apr. 12, 2019). Consistent with the government's reconsidered

2

position in its Repeal Rule and its representations in federal court confirming the Final Rule's deficiencies, the reinstated Final Rule is arbitrary and capricious and exceeds ONRR's authority under applicable statutes and lease terms, and now must be set aside. In the government's own words, "[t]he defects in the [Final] Rule permeated all aspects of mineral valuation, impacting oil, gas, and coal from the contract phase through to the sale of derivative products, such as electricity. ONRR was unable to resolve those flaws despite months of effort and dozens of inquiries from lessees. . . . The [Final] Rule's defects were substantial and pervasive, and they compromised ONRR's mission to collect, verify, and distribute royalties each month." *Id.*, ECF No. 57, at 1-2.

Parties. API is a national trade association that represents over 625 members involved in all aspects of the oil and natural gas industry, including the exploration and production of both onshore and offshore resources. The U.S. oil and natural gas industry supports 9.8 million U.S. jobs and more than 8 percent of the U.S. economy. The industry has paid more than $150 billion in royalty revenues to the federal treasury. Several of API's members operate leases on federal and Indian lands with royalty obligations in Wyoming, other states, and on the Outer Continental Shelf (OCS). API, on behalf of its members, submitted detailed comments on ONRR's proposed rule that became the Final Rule—comments which ONRR largely ignored in making almost no changes between its proposed and Final Rule. *See* 80 Fed. Reg. 608 (Jan. 6, 2015). API also previously filed a lawsuit against the Final Rule in this Court. API voluntarily dismissed that action without prejudice after the Repeal Rule took effect. API further intervened in the California litigation regarding the Repeal Rule.

Respondent Department of the Interior is a federal agency of the United States within the scope of 5 U.S.C. § 701(b)(1) (APA) and 28 U.S.C. § 1391 (venue). Respondent ONRR is a

federal agency within the U.S. Department of the Interior with responsibility for implementing

the federal and Indian royalty program.  Respondents Bernhardt and Gould are respondents in

their official capacities and officers of the United States, which has waived its sovereign

immunity under the APA, 5 U.S.C. § 702.

     Legal Background.  The Mineral Leasing Act and the Outer Continental Shelf Lands Act,

and lease terms, limit the royalty owed to a specified percentage of the "value of the production

removed or sold" from an onshore lease, or "saved, removed, or sold" from an offshore lease, in

each case determined at or near the lease.  *See* 30 U.S.C. § 226(b); 43 U.S.C. § 1334(a)(1).

Since 1988, the oil and gas industry has operated under a comprehensive regulatory regime for

valuing oil and gas production from federal leases.  Those regulations were the product of a

multi-year, collaborative effort specifically intended to resolve uncertainty and standardless

agency discretion that had plagued valuation for royalty purposes prior to 1988.  Many

companies, large and small, relied on those regulations and implementing agency guidance and

agreements over many years in investing the enormous resources necessary to undertake

commercially risky and expensive leasing, exploration, and development of federal oil and gas

resources.

     Several foundational legal principles emerged from the underlying statutes, lease terms,

and ONRR's and its predecessor agency's years of administering royalties from federal onshore

and offshore oil and gas leases.  For example, ONRR may not second-guess fairly-reached

arm's-length prices, and should not substitute wholesale its own values for lessees' valuations.

Moreover, value for royalty purposes must be established at or near the lease.  Relatedly, ONRR

must permit lessees to deduct reasonable, actual, and necessary transportation and processing

costs to reflect value at the lease.  One prime example is ONRR's longtime treatment of

4

movement of bulk production from subsea manifolds to platforms many miles away as deductible transportation costs.  Other examples include existing agreements approving higher allowances where warranted by individual operations.

Summary of Final Rule Defects.  It is well-established that an agency cannot summarily disavow and cast aside prior regulations.  Rather, ONRR must provide a compelling justification to change its regulations.  The Final Rule easily fails this requirement.  Discarding longstanding regulations for valuation of federal oil and gas for royalty purposes, proffering no evidence or meaningful justification, and entirely ignoring substantial comments from the regulated industries, the Final Rule instead creates widespread uncertainty and in many cases makes compliance impossible, placing lessees at risk for enforcement actions and substantial penalties.  The Final Rule's problems are numerous, fundamental, and pervasive, and the government has now repeatedly made clear that it agrees.

Through its so-called "default" provision, and numerous triggers throughout the Final Rule, ONRR defeats the very purpose and need of having regulations for lessee valuation in the first instance.  Indeed, the Final Rule gives ONRR broad power to retroactively increase the amount of royalty due, with corresponding late payment interest, even if the lessee fully complied with ONRR's valuation regulations in initially paying its royalties.  The Final Rule provides no indication of when ONRR will (or will not) substitute its judgment for the lessee, how ONRR would (or would not) wield such "discretion," or what factors ONRR would (or would not) utilize.  ONRR introduces an unreasonably broad "misconduct" trigger for ONRR's application of the default provision, and even this term does not limit ONRR; for example, ONRR can invoke the default provision if "for any reason" ONRR cannot determine that a lessee properly paid royalty.  Further, ONRR claims it can demand additional royalty if the lessee's

arm's-length sales price is 10% lower than the "lowest reasonable price," or if arm's-length

transportation or processing allowances are 10% higher than the "highest reasonable measures"

of such costs—facially circular and arbitrary standards. In sum, valuation devolves into a

guessing game for lessees, at their sole risk of determining a royalty value that ONRR may later

deem "wrong."

      Moreover, ONRR's disagreement with a lessee on valuation would produce far more

drastic consequences under the Final Rule than the lessee's opportunity to fix reporting or

payment errors that had been available under the longstanding prior regulations. Under the Final

Rule, up to seven years after a sales contract is executed, oil and gas is produced, and royalty is

paid, ONRR can arbitrarily demand additional royalty, and substantial late payment interest.

ONRR can substitute whatever it believes the value of particular oil and gas should be, with no

transparent rationale or accountability to lessees or reviewing bodies. For example, if ONRR

believes a lessee's oil or gas price is more than 10% below what ONRR deems "reasonable,"

ONRR in its unilateral revaluation can proceed to disregard the 10% floor altogether. Moreover,

in doing these unilateral calculations, ONRR ironically would utilize benchmarks and metrics

that ONRR is not permitting lessees to use, and its calculations likely would not be replicable by

lessees due to ONRR's reliance on confidential information of other lessees. This reservation of

unilateral valuation authority divorced from any predictable, objective criteria observable by

lessees is neither fair nor consistent with the statutory authority Congress has delegated to the

agency or the lease contract that the lessee entered into.

      ONRR's newly announced freedom to reset oil and gas values especially contravenes the

agency's longstanding recognition of the reliability of arm's-length contracts. While the Final

Rule's preamble "reaffirms" that "gross proceeds from arm's-length contracts are the best

indication of market value," in reality the Final Rule silently deletes longstanding provisions in the existing regulations specifically protecting against ONRR's substituting its judgment for an arm's-length sales price. Moreover, the Final Rule disregards any contract that is not in writing and signed by all of the parties, an artificial distinction that fails to reflect the realities of modern business transactions and black letter law. Indeed, the Final Rule at the same time defines "contract" and "arm's-length contract" as any written or oral agreement that is enforceable by law, and not requiring a writing or signature. Nevertheless, now ONRR may unilaterally determine the royalty value under the default provision despite a legally valid but unwritten arm's-length contract or addendum thereto.

The Final Rule impermissibly seeks to extract additional financial consideration also through blanket denials of allowances to which lessees are legally entitled. ONRR's preamble to its Final Rule states that "for purposes of determining royalty, the value of crude oil produced from Federal leases is determined at or near the lease," and incorporates the same statement for federal gas. But this is mere lip service. The Final Rule imposes a number of new, arbitrary limits on transportation and processing allowances, including but not limited to the circular 10% above what is "reasonable" threshold noted above; hard caps on allowances as a percentage of the total value of oil, gas, or natural gas liquids; vague constraints on transportation allowances for costs lessees purportedly did not "incur"; and elimination of any ability to net transportation factors in reporting royalty value for oil and gas production. These artificial limitations are significant since substantial volumes of gas are now being liquefied and transported long distances. ONRR also is terminating all existing agreements that provide for higher allowance exceptions, notwithstanding ONRR's prior recognition that some operations justifiably incur such higher costs as allowable deductions.

7

ONRR's sudden reversal on offshore subsea transportation serves as the most blatant example of the Final Rule's arbitrary denial of transportation costs.  The Final Rule now defines non-deductible "gathering" to categorically include all movement of offshore oil or gas over many miles.  This rescinds over 15 years of guidance and extensive analysis of this issue, whereby ONRR determined that most subsea movement of oil or gas over long distances (e.g., to some platforms 50 or more miles away) in the deepwater OCS is transportation, and thus deductible as a transportation allowance to realize the value of oil and gas at the lease.  After two decades of industry reliance, ONRR without justification purports to reach the opposite conclusion.  The Final Rule's contradiction of years of consistent precedent ignores the realities of OCS development, upsets settled investment-backed expectations, and vastly understates the associated cost to industry.

Similarly, though it allows more lessees to use index pricing to value gas production from federal leases, the Final Rule demands an arbitrary premium for that privilege and ignores how oil and gas actually flowed and was sold.  For example, a lessee inexorably must use the "highest" reported monthly bidweek price at the market center.  In addition, a lessee must use the highest index among multiple index pricing points to which the lessee's gas hypothetically could flow, even if the gas does not or could not physically flow to those other index pricing points due to pipeline constraints or other factors.

The Final Rule contains several other legally problematic facets.  For example, the Final Rule affords no way for lessees to obtain meaningful oil or gas valuation assistance from ONRR.  Further, it relies on outdated cost information, and fails to reflect the significant effect of the new price environment.

Lack of statutory authority. The Final Rule exceeds ONRR's statutory authority because, under the applicable statutes and binding corresponding lease terms, the government's royalty must be based on "value of the production" of oil or gas from federal leases. The Final Rule concedes these principles, but then proceeds to violate them by asserting unilateral authority to cast aside lessees' valuations, particularly those based on arm's-length contract prices, at whim and based on vague and unworkable standards; by imposing inflexible blanket rules denying lessees' ability to deduct all appropriate transportation and processing costs; and by requiring an inflated premium to utilize index pricing. As the government has conceded, the Final Rule "had defects that undermined its purposes, compromised lessees' ability to comply, and undermined ONRR's ability to determine and verify royalties." *State of Cal.*, ECF No. 57 at 7. By contrast, the legality of the preexisting regulations under statute has never been challenged.

The Final Rule is Arbitrary and Capricious. The Final Rule does not articulate any reasoned basis for why wholesale changes are needed to the existing royalty valuation system which is already subject to robust audits by regulatory authorities. The Final Rule is arbitrary and capricious for numerous reasons, including: (i) lessees face uncertainty on whether their royalty payments are correct, or whether ONRR will interject its own black box valuation under its default provision; (ii) ONRR prohibits certain lessees from valuing gas based on a published or adjusted index price proximate to the lease, and in other instances requires use of index prices that are unattainable for that gas; (iii) ONRR arbitrarily limits transportation and processing costs for oil and gas lessees; and (iv) while ONRR claims the Final Rule provides "greater simplicity, certainty, clarity, and consistency in product valuation for mineral lessees," ONRR has now confirmed that the Final Rule yields precisely the opposite outcome.

9

The Final Rule ignored detailed and meritorious concerns raised by API and others during the rulemaking process and made almost no substantive changes to the proposed Rule, in an effort to make the new rules applicable to production by January 1, 2017, mere days before the end of the previous Administration. But even ONRR now concedes those public comments were well-founded, and acknowledges that the Final Rule is fundamentally defective and unworkable. Indeed, the same Administration responsible for issuing the Final Rule first recognized these flaws, as "[p]roblems with the [Final] Rule surfaced soon after publication" on July 1, 2016. *State of Cal.*, ECF No. 57 at 4. By the time implementation was imminent in December 2016, ONRR realized that the Final Rule "contained several defects that . . . would seriously complicate, and probably compromise, ONRR's ability to implement and enforce" the Final Rule, thereby leaving it to the new Administration that took office the next month to address the dysfunctional Final Rule. *Id.* It was improper for ONRR not to fix these problems in the Final Rule before promulgating it and upending the functional royalty valuation regime, and any effort to implement the Final Rule with its acknowledged central deficiencies is the essence of arbitrary and capricious.

Jurisdiction and Venue. This Court has jurisdiction under 28 U.S.C. § 1331. Venue is proper under 28 U.S.C. 1391(e) because Defendants are either agencies of the United States or officers or employees of the United States or agencies thereof acting in their official capacities or under color of legal authority; several of Petitioner's members have federal oil and gas leases and substantial operations in Wyoming; and the Final Rule will directly and adversely affect their oil and gas operations involving their federal leases in Wyoming.

Requested Relief. Petitioner respectfully requests that the Court declare the Final Rule unlawful, and vacate the Final Rule.

Dated this 13th day of June 2019.

Respectfully submitted,

Keith S. Burron, WSB No. 5-2884
The Burron Firm, P.C.
1695 Morningstar Road
Cheyenne, WY 82009
Phone:  (307) 631-7372
keith@burronlaw.com

Peter J. Schaumberg [*pro hac vice* pending]
James M. Auslander [*pro hac vice* pending]
BEVERIDGE & DIAMOND, P.C.
1350 I Street, NW, Suite 700
Washington, D.C. 20005-3311
Phone: (202) 789-6009
Fax: (202) 789-6190
pschaumberg@bdlaw.com
jauslander@bdlaw.com
**ATTORNEYS FOR PETITIONER AMERICAN
PETROLEUM INSTITUTE**